## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| PHYLLIS MASCHINO, et al.,      ) | |
|                         ) | |
|     Plaintiffs,             ) | |
|                         ) | |
|       vs.                 ) | CAUSE NO. 1:14-cv-639-WTL-DML |
|                         ) | |
| MARSHALL ROYALTY, et al.,      ) | |
|                         ) | |
|     Defendants.          ) | |

## ENTRY ON DEFENDANTS' MOTIONS TO DISMISS

This cause is before the Court on three motions to dismiss filed by the Defendants (dkt. nos. 23, 27, and 51). These motions are fully briefed,[1] and the Court, being duly advised, resolves them as set forth below.[2]

## I.      APPLICABLE STANDARD

The Defendants move to dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be

---

[1] The Plaintiffs filed a motion for leave to file a response to Defendants Ed and Tex Wayt's reply in support of their motion to dismiss (dkt. no. 63). While the motion asks for leave to file an eight-page surreply, the motion itself sufficiently articulates the Plaintiffs' arguments, and in light of the Court's ruling on the Wayts' motion to dismiss, the motion is **DENIED**. A surreply is not necessary to address whether the Wayts are jointly and severally liable for the filing of the August 31, 2012, lawsuit because the malicious prosecution claim brought for that filing is being dismissed as premature. Secondly, as explained more fully below, the facts regarding "The Blast Shop, Inc." are irrelevant to the motion to dismiss, and it is not necessary for the Plaintiffs to file a surreply to address them further.

[2] The Court does not believe oral argument would be helpful in this case. Accordingly, Defendants Ed and Tex Wayt's motion for hearing (dkt. no. 60) is **DENIED**. Defendants William Braman, Jeffrey Lorenzo, Montgomery Elsener & Pardieck, LLP, and Lorenzo & Beavers' motion to join in part the request for oral argument (dkt. no. 65) is, therefore, also **DENIED**. Attached to one of the Plaintiffs' responses is a document entitled "Supplement Plaintiffs' Request for Oral Argument." *See* dkt. no. 43-1. To the extent this was a motion for oral argument on the motions to dismiss, it is also **DENIED**.

granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

## II.    BACKGROUND

The facts set forth in the Plaintiffs' Complaint are as follow.

In 1998, Plaintiff Phyllis Maschino opened High Value Metal, Inc. ("High Value"), a metal fabrication business in Seymour, Indiana. In 1999, she purchased several pieces of sand blasting equipment ("the Blasting Equipment") and constructed a building addition at 101 Blish Street A, Seymour, Indiana ("the Blast Shop Facility"). Her new sand blasting business was named New Blast, LLC. Maschino's daughter and son-in-law, Plaintiffs Rebecca Ritz and Johnny Brasington, ran High Value; Maschino's other daughter, Defendant Tex Wayt, and her husband, Defendant Ed Wayt (collectively, "the Wayts"), ran the Blast Shop Facility.

In 2007, Defendant Marshall Royalty became the owner of High Value's competitor, Defendant Crane Hill Machine & Fabrication, Inc. ("Crane Hill"). Realizing the Blast Shop Facility held a competitive advantage over Crane Hill because of its size and location, in 2012,

Royalty and others commenced a scheme to obtain the Blast Shop Facility and High Value's customers in order to increase Crane Hill's business throughout the Midwest.

On March 30, 2012, Royalty entered into a Bill of Sale with Tex and Ed Wayt to purchase the Blasting Equipment for $145,000. Royalty then met with Maschino and gave her a lease agreement to sign so he could rent the Blast Shop Facility. After explaining that Tex and Ed Wayt did not own the Blasting Equipment and that she was not interested in leasing the Blast Shop Facility to Royalty, Royalty said "the deal is off." Tex Wayt returned Royalty's check to him. Maschino then obtained legal counsel to ensure her ownership of the Blasting Equipment and the Blast Shop Facility.

However, the following day, on April 1, 2012, Royalty hired Tex Wayt and Daniel Macintosh to run the Blast Shop Facility for him. When Maschino became aware of this, she changed the locks and had Ritz and Brasington assume control of the Blast Shop Facility. She then inventoried the property at the Blast Shop Facility in order to determine which property was hers and which property belonged to Royalty and Crane Hill. On July 13, 2012, Royalty retrieved the property he had placed in the Blast Shop Facility.

Royalty, therefore, had to resort to a different course of action in order to obtain High Value and the Blast Shop Facility's customers—false and deceptive advertising. Royalty and Ed Wayt began telling others that the Blast Shop Facility was closed or that Royalty had purchased it and moved it to Crane Hill's facility. They placed signs indicating this fact along highways in the Seymour, Indiana area. They also redirected all mail to be delivered to the Blast Shop Facility to Tex and Ed's home, transferred the Blast Shop Facility's telephone number to one owned by Crane Hill, and falsely advertised the wrong phone number on the Blast Shop Facility's website.

On August 31, 2012, Maschino sued Royalty, Tex, and Ed in Jackson Superior Court for, among other claims, theft and constructive fraud based on their unauthorized and deceptive use of the Blast Shop Facility.  On the same day, Royalty filed suit against Maschino for criminal conversion, replevin, and negligence.  Defendant William Braman and his law firm, Defendant Montgomery Elsner Pardieck, LLP, represented Crane Hill and Royalty; Defendant Jeffrey Lorenzo and his law firm, Defendant Lorenzo & Bevers, represented Tex and Ed Wayt.

In support of his suit, Royalty filed a false affidavit claiming he was the owner of the Blasting Equipment and that Maschino had failed to return certain other pieces of his property.  During the pre-judgment possession hearing on November 20, 2012, however, Royalty testified that the motive behind his lawsuit was to retaliate against Maschino, and he admitted that his affidavit was false, including his allegation that he owned the Blasting Equipment.  Thus, the court awarded Maschino pre-judgment possession of the property at issue.

Maschino filed for summary judgment on April 4, 2013.  On April 16, 2013, Royalty offered to settle the lawsuit; Maschino rejected the offer on April 23, 2013.  On May 14, 2013, Royalty filed a response to Maschino's motion for summary judgment, agreeing that Maschino was entitled to partial summary judgment because she owned the Blasting Equipment and did return some of his property; however, he opposed Maschino's motion for attorney's fees and maintained that other pieces of his property were not returned.  In support, Royalty filed another false affidavit.  On July 29, 2013, the court awarded partial summary judgment to Maschino, finding Royalty's claim of ownership over the Blasting Equipment to be frivolous; however, it denied the motion with respect to other pieces of property as it found issues of fact remained as to who owned them, and it took the attorney's fees issue under advisement.

On May 17, 2013, the Wayts filed a motion for leave to add a counterclaim; the counterclaim was identical to the suit Royalty filed against Maschino in 2012.

On July 10, 2013, Maschino filed a motion for a preliminary injunction to stop the false and deceptive advertising. In response Royalty submitted two false affidavits on August 15, 2013. Despite Maschino's motion, Royalty and Crane Hill continued to falsely advertise that the Blast Shop Facility was closed or had been relocated to Crane Hill's facility.

On August 28, 2013, Royalty filed a motion to correct error in order to submit another false affidavit. This motion was denied on September 6, 2013.

In the spring of 2014, Royalty employed another law firm to file interrogatories and certain requests for production that focused on the ownership of the Blasting Equipment. After Maschino informed the law firm that this issue had been resolved by the court's partial summary judgment ruling, the interrogatories and requests were not served.

On April 25, 2014, the Plaintiffs filed their Complaint in this Court. Their Complaint sets forth eight counts against the Defendants: 1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); 2) a claim brought pursuant to Indiana law for unfair and deceptive business practices; 3) a claim brought pursuant to the Indiana Racketeer Influence & Corrupt Organizations ("RICO") statute; 4) a claim brought pursuant to Indiana's Civil Recovery for Crime Victim's Act ("CVA"); 5) a malicious prosecution claim; 6) an abuse of process claim; 7) a claim for intentional infliction of emotional distress ("IIED"); and 8) a claim for slander and libel.

### III.   DISCUSSION

All of the Defendants have filed motions to dismiss some or all of the counts in the Plaintiffs' Complaint. While they have all filed separate motions, there are a few counts that they all argue must be dismissed for the same reasons.

The first is the Plaintiffs' RICO claim. The Plaintiffs' Complaint alleges as follows:

1. Beginning on or around March 30, 2012, and continuing, the Defendants have jointly undertaken a two-pronged scheme to (1) obtain customers and revenue for the benefit of Crane Hill Machine & Fabrication, Inc. through false advertising and deceptive, unfair, and corrupt business practices and (2) to injure the Plaintiffs, through corrupt business influence by multiple criminal acts of intimidation, theft, forgery, perjury, obstruction of justice, and money laundering.

2. This scheme has been carried out by the enterprise led by Marshall Royalty, personally and by use of representatives of his solely-owned corporation, Crane Hill Machine & Fabrication, Inc. and also consisted of attorney William Braman, personally and by use of his law firm, Montgomery, Elsner & Pardieck, LLP, by Tex Anna Wayt and Ed Wayt, personally, and by Jeffrey Lorenzo ("Lorenzo"), personally and by his law firm, the partnership of Lorenzo & Bevers (collectively, "Defendants" or "Enterprise").

. . .

131. Royalty, Crane Hill, Braman, Montgomery Elsner & Pardieck, Tex, Ed, Lorenzo, and Lorenzo & Bevers ("Enterprise") constitute an "association-in-fact" enterprise and Crane Hill constitutes an enterprise as a corporation as defined by Indiana Code § 35-45-6-1(c).

Dkt. No. 1 ¶¶ 1-2, 131. All of the Defendants argue that the Plaintiffs' RICO claim must be dismissed because the Plaintiffs have failed to adequately allege the existence of an "enterprise." Indiana has defined "enterprise" as "(1) a sole proprietorship, corporation, limited liability company, partnership, business trust, or governmental entity; or (2) a union, an association, or a group, whether a legal entity or merely associated in fact." Ind. Code § 35-45-6-1(d). Indiana courts have further noted that "the essential elements of an enterprise include: '(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering.'" *Miller v. State*, 992 N.E.2d 791, 794 (Ind. Ct. App. 2013) (quoting *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992)); *see also id.* at 795 ("Furthermore, the hallmark of an enterprise is structure. A RICO enterprise is an ongoing group of persons 'associated through time, joined in purpose, and

organized in a manner amenable to hierarchical or consensual decision-making.'") (quoting *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)) (internal citation omitted).

The Court agrees with the Defendants that the Plaintiffs' Complaint fails to allege the existence of an enterprise. The allegations in the Complaint amount to nothing more than a group of people who got together and engaged in alleged RICO activities. Even giving the Complaint the most liberal reading, there are simply not enough facts to infer that the alleged scheme to injure the Plaintiffs personally and financially by obtaining their customers was the work of a RICO enterprise, and not simply the work of a group of individuals seeking financial gain. **Accordingly, the Plaintiffs have failed to allege the existence of an enterprise and their RICO claim, Count III, is dismissed as to all Defendants.**

Next, all of the Defendants argue that Count V, the Plaintiffs' malicious prosecution claim for bringing the "frivolous and fraudulent" August 31, 2012, lawsuit, must be dismissed.

> There are four elements of a malicious prosecution claim: (1) the defendant [] instituted or caused to be instituted an action against the plaintiff []; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.

*City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). All of the Defendants argue that this count must be dismissed because the underlying state court litigation has not terminated in the Plaintiffs' favor. In response, the Plaintiffs argue that because they were granted partial summary judgment as to the issue of ownership of the Blasting Equipment, their malicious prosecution claim can go forward. *See* dkt. no. 43 at 20 ("The elements of malicious prosecution in no way require that all claims included in the same suit must be terminated in the Plaintiff's favor so long as the Plaintiff can prove that there was, in fact, a claim terminated in her favor."). The Plaintiffs, however, offer no support for this position, and the Court is not otherwise aware

of any. In fact, other courts that have examined this issue have found no favorable termination when only partial summary judgment was entered, or when only part of the action was resolved. *See, e.g.*, *Rich v. Siegel*, 86 Cal. Rptr. 665, 667 (Cal. Ct. App. 1970) (holding that a partial summary judgment entered in the plaintiff's favor did not constitute a favorable termination for a malicious prosecution claim); *Kantrowitz v. Clipfel*, 168 A.2d 301, 303 (Conn. Super. Ct. 1959) (finding no termination in the plaintiff's favor despite a jury verdict in her favor because "issues under the second count of the amended complaint remain to be litigated"). The elements of malicious prosecution in Indiana speak of "the action" not of individual claims; because the Plaintiffs only obtained favorable termination on part of the underlying lawsuit, they have not obtained favorable termination of the action. **Accordingly, Count V of the Plaintiffs' Complaint is premature and DISMISSED as to all Defendants on that basis**.

Finally, all of the Defendants argue that Count VI, the abuse of process claim, must be dismissed. This claim is premised on the August 31, 2012, lawsuit filed by Royalty and the May 17, 2013, counterclaim filed by the Wayts.

> A plaintiff claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish. The two elements of abuse of process are: (1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings. If a party's acts are procedurally and substantively proper under the circumstances then his intent is irrelevant. There is no basis for an abuse of process claim if legal process is used to accomplish an outcome that the process was designed to accomplish.

*Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013) (internal citations and quotations marks omitted). As the Defendants note, the underlying state court action involves competing claims as to ownership of the Blast Shop Facility, the Blasting Equipment, and other pieces of property. Filing a lawsuit and/or a counterclaim claiming ownership and/or return of certain pieces of property is by no means an improper use of process, regardless of the parties'

motives. *See Brown v. Robertson*, 92 N.E.2d 856, 858 (Ind. Ct. App. 1950) ("A regular and legitimate use of process, though with an ulterior motive or bad intention[,] is not a malicious abuse of process."). **Accordingly, Count VI of the Plaintiffs' Complaint is DISMISSED as to all Defendants**.[3]

The Court now turns to the separate motions to dismiss.

## A. Defendants William Braman, Jeffrey Lorenzo, Montgomery Elsner & Pardieck, LLP, and Lorenzo & Beavers' Motion to Dismiss (dkt. no. 23)

In addition to the counts addressed above, Defendants William Braman, Jeffrey Lorenzo, Montgomery Elsner & Pardieck, LLP, and Lorenzo & Beavers (collectively "the Attorney Defendants") move to dismiss the rest of Plaintiffs' Complaint against them in its entirety.

Their first argument is that dismissal is warranted for Counts I, II, IV, and VIII[4] because these counts "seek to hold the attorney defendants vicariously liable for the actions of their clients." Dkt. No. 24 at 7. They direct the Court to the Restatement (Third) of Law Governing Law in support of their position, which provides that "[a] lawyer, like other agents, is not as such liable for acts of a client that make the client liable." Restatement (Third) of Law Governing Law § 56 (2000), cmt. c.[5] Based on this, the Attorney Defendants argue that the Plaintiffs can only

---

[3] The Plaintiffs claim that the Defendants filed false affidavits and made false statements in briefs in conjunction with the underlying state court litigation. *See* dkt. no. 1 ¶ 193. If true, a motion for sanctions for these actions may indeed be appropriate; however, this does not constitute an abuse of process. Moreover, the fact that the state court found that portions of Royalty's lawsuit was frivolous—because of his own testimony—in no way means that the Wayts' counterclaim—regardless of the fact that it is similar and/or identical to Royalty's—is frivolous. The Wayts and Maschino's competing claims of ownership have yet to be determined by the state court.

[4] The Attorney Defendants misstate that Count VII seeks redress for libel and slander; it is Count VIII that asserts a claim for libel and slander.

[5] The Attorney Defendants admit that Indiana has not adopted § 56 of the Restatement, but merely surmise that the "Restatement accurately states the law that would be followed by the State of Indiana in the context." Dkt. No. 24 at 10. The Court notes that the Plaintiffs agree. *See* dkt. no. 43 at 9 ("Maschino agrees with the Defendants position that §§ 56 and 57 of the

state a claim against them "for tortious conduct if they allege specific actions by the defendants in furtherance of that tort, or specific acts that provided a substantial assistance to their clients." Dkt. No. 24 at 11.  Thus, they move to dismiss Counts I, II, IV, and VIII against them because the Complaint does not allege that the Attorney Defendants committed any acts or omissions relevant to those counts.  The Court agrees that these counts must be dismissed.

Count I is brought pursuant to the Lanham Act for false advertising.  It alleges that

> the Defendants' intentional and deliberate use of blatantly false signs, false websites, false phonebook listings, and false oral statements, by phone and in person, to communicate to customer[s] in Indiana, Kentucky, and various other states in which Crane Hill operates that Crane Hill owns or owned the Blast Shop Facility, moved the Blast Shop Facility to Crane Hill, and/or shut the Blast Shop Facility down constitutes a false or misleading representation of statement fact.

Dkt. No. 1 ¶ 116.  The Attorney Defendants are correct that nowhere in the Plaintiffs' Complaint do they allege that the Attorney Defendants placed false signs, used a false website, used a false phone number, or made false oral statements in communicating with the Plaintiffs' current or potential customers.  In other words, the Plaintiffs have not alleged that the Attorney Defendants committed any false advertising.  Similarly, with regard to Count II, the Plaintiffs' Complaint alleges that

> Defendants have engaged and are engaging in business practices which are deceptive and misleading in a material way by advertising as the owner of the Blast Shop Facility to all potential customers and by intentionally increasing such false representation by use of false signage, websites, phonebook entries, oral statements in person, and deceptive use of phone numbers, constituting unfair and deceptive business practices as defined by common law in Indiana.

---

Restatement of the Law Governing Lawyers, while not formally adopted in Indiana, does, in fact, accurately state the law in question.").

Dkt. No. 1 ¶ 123. Again, the Plaintiff's Complaint does not allege that the Attorney Defendants personally used a false website, used a false phone number, or made false oral statements in communicating with the Plaintiffs' current or potential customers.

Count IV of the Plaintiff's Complaint seeks recovery for violations of certain criminal statutes, specifically for theft and conversion, forgery and counterfeiting, and deception; however, only Royalty, Crane Hill, and the Wayts are alleged to have committed theft, conversion, and deception. With regard to the forgery and counterfeiting claim, the Plaintiffs allege that

> [t]he Enterprise made or uttered false documents, signs, and websites, as more fully set out above, presented to the United States Postal Service, the general public, and potential customers, in a manner that purported the execution of such documents, signs, and websites to have been made or uttered by the authority of New Blast or its sole owner, Maschino, with the intent to defraud and such actions constitute a count of Forgery and Counterfeiting under Indiana Code § 35-43-5-2(a) and (b).

Dkt. No. 1 ¶ 178. Once again, it is not alleged that the Attorney Defendants used any false documents, signs, or websites in communicating with the Plaintiffs' current or potential customers. Similarly, Count VIII is brought for slander and libel and alleges that

> [a]t numerous and various times from June 18, 2012, the Enterprise has intentionally made numerous untruthful statements via false sig[n]s, false websites, false verbal communication both in person and by phone to potential customers indicating that (1) the Blast Shop Facility is owned by Crane Hill, (2) the Blast Shop Facility has been closed and is no longer in operation, or (3) the Blast Shop Facility is owned by Crane Hill and has been moved to Crane Hill.

Dkt. No. 1 ¶ 202. Again, the Attorney Defendants are not alleged to have made untruthful statements by using false sign, websites, or other communications to Plaintiffs' current or potential customers.

In response, the Plaintiffs make various assertions—that the Attorney Defendants were not truthful to the court in the underlying state court action, that Lorenzo has a conflict of

interest, and that the Attorney Defendants committed perjury, obstruction of justice, witness tampering, and intimidation. Even assuming these assertions are true, they are not responsive to the Attorney Defendants' argument that they did not personally commit any acts as alleged in Counts I, II, IV, and VIII. The Court agrees with the Attorney Defendants that the Plaintiffs' Complaint does not allege that they personally committed any of the acts alleged in these counts, and that they cannot be held vicariously liable if it is found that their clients did. **Accordingly, Counts I, II, IV, and VIII are DISMISSED as to the Attorney Defendants.**

Next, the Attorney Defendants argue that Count VII, the claim for IIED, should be dismissed because they are protected by a qualified judicial privilege. Count VII alleges that

> The Enterprise has engaged in extreme and outrageous conduct by virtue of its filing multiple frivolous suits, engaging in numerous criminal acts including open and notorious theft by the taking of Maschino's real and intangible property interests, laughing during court proceedings, making comments about Maschino's pending death, etc.

Dkt. No. 1 ¶ 197. The only conduct, therefore, alleged against the Attorney Defendants relevant to this count is the "filing of multiple frivolous suits."[6]

The Attorney Defendants argue that they cannot be held liable because they are protected by a qualified judicial privilege which provides that "no liability to third parties arises from the attorney's conduct as an attorney for another." *Meier v. Pearlman*, 401 N.E.2d 31, 40 (Ind. Ct.

---

[6] The Court notes that the state court specifically found that it was "Royalty's failure to communicate truthfully with [his] Attorney in the preparation of his Affidavit and Complaint" that rendered them to be "frivolous filing[s]." *See* dkt. no. 1-16 at 6. To the extent, therefore, that the filings were frivolous, the state court appears to have placed fault on Royalty, not his attorney or his attorney's law firm. Moreover, as was noted above, it does not follow that because the state court found part of Royalty's lawsuit to be frivolous—because of his own testimony which contradicted his statements in his complaint and affidavit—that the Wayts' counterclaim is also frivolous. This is a determination that will be made, if at all, by the state court. However, again, to the extent frivolous filings have been made in state court, the Plaintiffs' remedies lie in state court.

App. 1980). However, there is an exception—"[l]iability will be found to apply to attorneys who are guilty of fraud, collusion or tortious conduct against third parties." *Nat'l City Bank, Indiana v. Shortridge*, 689 N.E.2d 1248, 1251 (Ind. 1997). The Court agrees with the Attorney Defendants that these exceptions do not apply and that therefore, the Attorney Defendants' actions are protected by the judicial privilege. As the Attorney Defendants note, both fraud and collusion under Indiana law require reliance by the Plaintiffs. *See Shepherd v. Truex*, 823 N.E.2d 320, 328 (Ind. Ct. App. 2005) (noting that under the attorney deceit statute, Ind. Code § 33-43-1-8, for an attorney to be liable for collusion, the plaintiff has to have relied on the misrepresentation of fact); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 667 (Ind. Ct. App. 2002) ("In order to maintain an action based on fraud, the complaining party must have relied upon misrepresentations made by the party to be charged.").[7] The Plaintiffs' Complaint, however, alleges the exact opposite—that the lawsuits contain false allegations and are supported by false affidavits. By alleging as such, the Plaintiffs have not shown that they relied on the allegations contained in the suits filed by the Attorney Defendants. *See, e.g.*, *Loomis*, 764 N.E.2d at 667 ("The Loomises' complaint does not allege nor do the Loomises argue that they have in any way relied upon any misrepresentations made by the Attorneys."). Moreover, as noted above, the Plaintiffs' Complaint does not state a claim for tortious conduct—both the malicious prosecution and abuse of process claims have been dismissed. **Accordingly, the Attorney Defendants' motion to dismiss Count VII is GRANTED.**

---

[7] The Plaintiffs argue that they have not brought a claim for fraud or a claim pursuant to the attorney deceit statute. While true, this misses the point of the Defendants' argument. They argue that because the Plaintiffs have not stated facts to support fraud or collusion, the exceptions to the judicial privilege do not apply. Therefore, the judicial privilege does apply to Count VII, a claim that the Plaintiffs did assert.

### B. Crane Hill and Royalty's Motion to Dismiss (dkt. no. 27)

In addition to the Counts addressed above, Crane Hill and Royalty move to dismiss Count IV of the Plaintiffs' Complaint—the claim brought pursuant to the CVA. However, they make no arguments in support of their motion to dismiss Count IV. **Accordingly, Crane Hill and Royalty's motion to dismiss Count IV is DENIED.**

### C. Tex Wayt and Ed Wayt's Motion to Dismiss (dkt. no. 51)

In addition to the counts addressed above, the Wayts move to dismiss Counts I, II, and VIII of the Plaintiffs' Complaint in their entirety. They also move to dismiss Counts IV and VII as to Plaintiffs Ritz, Brasington, 101 Blish Street A, 101 Blish Street B, and High Value.

The Wayts argue that Counts I, II, and VIII must be dismissed because the Plaintiffs have failed to state a claim for each count. Each of these counts is premised on allegations that the Wayts engaged in false advertising and made false statements via signs, websites, phonebook listings, etc. in communicating with customers that the Blast Shop Facility had moved, was closed, or was now operated by Crane Hill. *See, e.g.*, dkt. no. 1 ¶¶ 116, 123, and 202. The Wayts claim that they owned and operated a business called "The Blast Shop," which apparently used the space known as the Blast Shop Facility to run a sand blasting business. Therefore, they argue that they were not making any false or deceptive statements or advertising when they informed customers—correctly, they argue—that "The Blast Shop" was no longer in business but had moved to a new location.

At the motion to dismiss phase, however, the Court must take the Plaintiffs' allegations as true, and the Complaint asserts that the Wayts wrongly advertised and communicated that "the Blast Shop Facility" was no longer in business, had moved, or was now owned by Crane Hill. *See, e.g.*, dkt. no. 1 ¶¶ 116, 123, and 202 (all referencing "the Blast Shop Facility"). Therefore,

the Complaint clearly states a plausible claim for relief as to Counts I, II, and VIII (with the exception discussed below).

Alternatively, the Wayts move to dismiss Counts I, II, and VIII as brought by Ritz, Brasington, Maschino, 101 Blish Street A, 101 Blish Street B, and High Value because the Complaint does not allege that these Plaintiffs have been damaged by the allegations contained in those three counts. Count VIII clearly only alleges that Maschino has been damaged. *See* dkt. no. 1 ¶ 205 ("Maschino has suffered substantial losses of business revenue, is experiencing continued losses daily, and said losses are the direct and proximate result of the false statements made by the Enterprise."). However, both Counts I and II allege that the "Plaintiffs have suffered and continue to suffer substantial injury," dkt. no. 1 ¶¶ 121 and 128; at the motion to dismiss phase, this is sufficient. **Accordingly, the Wayts motion to dismiss Counts I and II is DENIED. Count VIII is DISMISSED as to Plaintiffs Ritz, Brasington, High Value, New Blast, 101 Blish Street A, and 101 Blish Street B because there is no allegation that these Plaintiffs were injured by the libel and slander alleged in that Count.**

The Wayts also argue that Count IV—the Plaintiffs' CVA claim—must be dismissed as to Ritz, Brasington, New Blast, 101 Blish Street A, 101 Blish Street B, and High Value because these "Plaintiffs have failed to allege any damages[.]" Dkt. No. 52 at 5. The Court disagrees. Maschino, her employees, and her businesses have pled pecuniary losses, and this is sufficient at the motion to dismiss phase. *See* dkt. no. 1 ¶ 176. **The motion to dismiss Count IV on this basis is DENIED.**

Finally, the Wayts argue that Count VII—the Plaintiffs' claim for IIED—must be dismissed as to Ritz, Brasington, New Blast, 101 Blish Street A, 101 Blish Street B, and High Value because there are no allegations that these Plaintiffs suffered any emotional distress. The

Plaintiffs have no objection.  **Accordingly Count VII is DISMISSED as to these Plaintiffs only**.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss (dkt. nos. 23, 27, and 51) have been resolved as follows:

·    The Attorney Defendants' motion to dismiss (dkt. no. 51) is **GRANTED IN ITS ENTIRETY.  Defendants William Braman, Jeffrey Lorenzo, Montgomery Elsner & Pardieck, and Lorenzo & Beavers are hereby DISMISSED from this case.**

·    Crane Hill and Royalty's motion to dismiss (dkt. no. 27) is **GRANTED IN PART AND DENIED IN PART.  Counts III, V, and VI are DISMISSED as to these Defendants**.

·    The Wayts' motion to dismiss (dkt. no. 51) is **GRANTED IN PART AND DENIED IN PART.  Counts III, V, and VI are DISMISSED as to these Defendants. Counts VII and VIII are DISMISSED as to Plaintiffs Ritz, Brasington, New Blast, 101 Blish Street A, 101 Blish Street B, and High Value.**

SO ORDERED: 12/02/14

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification