UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **PHYLLIS MASCHINO** *et al.*, | ) |
| | ) |
|    Plaintiffs/Counterclaim Defendants, | ) |
| | ) |
|          vs. | )  Case No. 1:14-cv-639-WTL-DML |
| | ) |
| **TEX A. WAYT** *et al.*, | ) |
| | ) |
|    Defendants/Counterclaim Plaintiffs. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendants' motion for summary judgment (Dkt. No. 107). This motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART** the motion for the reasons, and to the extent, set forth below.

## I.    STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence

of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The facts that follow relate to the Plaintiffs' false advertising claim under the Lanham Act and are taken in the light most favorable to the Plaintiffs.[1] Additional relevant facts are included in the Discussion section below.

Plaintiff Phyllis Maschino is the sole owner and operator of High Value Metal, Inc. ("High Value Metal"), 101 Blish Street B, LLC, 101 Blish Street A, LLC, and New Blast, LLC. In 1998, Maschino, through 101 Blish Street B, LLC, opened High Value Metal, a metal fabrication business in Seymour, Indiana. Maschino was assisted by her son, Fred, daughter, Plaintiff Rebecca Ritz, and son-in-law, Plaintiff Johnny Brasington, in the operation of High Value Metal, which was located at 101 Blish Street B, Seymour, Indiana.

In 1999, Maschino built a sandblasting facility at 101 Blish Street A, Seymour, Indiana (the "Blish Street A Facility"), and purchased several pieces of sandblasting equipment. She transferred ownership of the Blish Street A Facility from herself to 101 Blish Street A, LLC. From June 1999 to March 30, 2012, Maschino's daughter and son-in-law, Defendants Tex A. Wayt and Ed Wayt (together, the "Wayts"), operated a sandblasting business, The Blast Shop, Inc., at the 101 Blish Street A Facility using Maschino's equipment. "The Wayts took all profit from the Blast Shop [] and operated the same through The Blast Shop, Inc., for which they were

---

[1] Many of the "facts" contained in the Plaintiffs' Complaint and Statement of Material Facts in Dispute section of their response brief are not supported by the evidence of record. The facts set forth herein are generally those that are supported by the record. The Court recognizes that the Defendants raise various objections to the Plaintiffs' evidence filed in opposition to the instant motion; the Court need not address those objections in as much as they are not relevant to the Court's decision herein.

the only shareholders." Dkt. No. 114 at 2. At no point in time did Maschino transfer or intend to transfer the sandblasting equipment she owned to the Wayts. Ed Wayt also operated a powdercoating business at a different location from around April 2005 until March 30, 2012, when he sold the powdercoating business to Crane Hill Machine & Fabrication, Inc. ("Crane Hill"), a competitor of High Value Metal, or to Marshall Royalty, Crane Hill's owner.

On March 30, 2012, the Wayts attempted to sell Maschino's sandblasting equipment to Royalty. Royalty then met with Maschino and Tex Wayt to discuss renting the Blish Street A Facility. Maschino explained to Royalty that the Wayts did not own the equipment and that she would not lease the Blish Street A Facility to Royalty. As a result, Royalty pulled out of the sandblasting equipment sale, and Tex Wayt immediately returned to Royalty a check Maschino believed to be the initial down payment she had received from Royalty for the sandblasting equipment.

The following day, April 1, 2012, Crane Hill hired Tex Wayt and Daniel Macintosh, who were working out of the Blish Street A Facility and using Maschino's sandblasting equipment. On or around June 18, 2012, Maschino learned that they were on Crane Hill's payroll. Maschino changed the locks and had Ritz and Brasington assume control and operation of the Blish Street A Facility. Maschino formed New Blast, LLC, on June 25, 2012, to operate a sandblasting business out of the Blish Street A Facility.

After they were locked out of the Blish Street A Facility in June 2012, the Wayts told business owners throughout Seymour and Jackson County that the Blast Shop was closed or that Royalty had purchased it and moved it to Crane Hill.[2] Royalty, encouraged by Ed Wayt, placed

---

[2] The Plaintiffs contend that the Wayts told business owners and customers that "the Blast Shop *Facility* was closed or that Royalty had purchased it and moved it to Crane Hill's

3

signs on Highway 50, stating the following: "The Blast Shop & The Blast Shop Powder Coating Have Moved to Crane Hill Machine[.]  For More Info call 812-358-3534[.]"  Dkt. No. 1-3.  That telephone number belonged to Crane Hill.  From 1999 to a point in 2012, The Blast Shop, Inc.'s telephone number was (812) 524-8817.[3]  The Plaintiffs also allege that in 2012, the Wayts created and maintained a website, www.theblastshopandpowdercoating.com, which listed 101 Blish Street as its address and 855-209-3101, which belonged to Crane Hill, as its telephone number.  Although the evidence of record does not entirely support these allegations, the Court will assume they are true for the purpose of its Entry.

The Plaintiffs filed this lawsuit on April 25, 2014, alleging a claim for false advertising under the Lanham Act and various state law claims against several defendants, including the Wayts.  The Wayts brought various state law counterclaims against Plaintiffs Maschino, 101 Blish Street A, LLC, High Value Metal, and New Blast, LLC.  In its Entry on Defendants' Motions to Dismiss (Dkt. No. 72), the Court dismissed Defendants William Braman; Jeffrey Lorenzo; Montgomery Elsner & Pardieck; and Lorenzo & Beavers from the case and also dismissed a number of claims and counterclaims.  The Court approved the voluntary dismissal by the Plaintiffs and Defendants Royalty and Crane Hill of all remaining claims that these parties asserted against each other.  *See* Dkt. No. 112.  The Plaintiffs' Lanham Act claim and various

---

primary business location."  Comp. ¶ 46 (emphasis added).  Although the evidence of record does not support this allegation, the Court will assume it is true for the purpose of this Entry.

[3]  The Plaintiffs contend that "Royalty, Tex, and Ed worked with a local phone company to obtain and transfer the number associated with the Blast Shop Facility 812-524-8817, despite Maschino's efforts to stop it."  Comp. ¶ 51.  There is no evidence that this number belonged to any of the Plaintiffs.  Rather, there is contrary evidence from the Plaintiffs themselves that the number belonged to The Blast Shop, Inc.  For example, the Plaintiffs refer to the telephone number as "The Blast Shop, Inc. Phone Number," Dkt. No. 114 at 5 & 6, and in her deposition, Maschino testified that the phone bill was paid by The Blast Shop, Inc. from 1999 to 2012, Dkt. No. 114-15 at 8.

4

state law claims against the Wayts and the Wayts' state law claims against Plaintiffs Maschino, 101 Blish Street A, LLC, High Value Metal, and New Blast, LLC remain.

### III. DISCUSSION

#### A. Lanham Act Claim

As relevant to the Plaintiffs' claim, the Lanham Act provides:

> (1) Any person who . . . in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which --
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). The Plaintiffs allege only a false advertising claim. *See* Compl. Claim I.

To establish a claim for false advertising, a plaintiff must present evidence supporting the following five elements: (1) a false statement of fact was made by the defendant in a commercial advertisement about its own or another's product; (2) the false statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a

loss of goodwill associated with the plaintiff's products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). "In addition, to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Id.* at 820.

> The Plaintiffs generally allege the following:
>
> the Defendants' intentional and deliberate use of blatantly false signs, false websites, false phonebook listings, and false oral statements, by phone and in person, to communicate to customer [sic] in Indiana, Kentucky, and various other states in which Crane Hill operates[,] that Crane Hill owns or owned the Blast Shop Facility, moved the Blast Shop Facility to Crane Hill, and/or shut the Blast Shop Facility down constitutes a false or misleading representation of [] fact.

Compl. ¶ 116. The Plaintiffs have not provided evidence that supports these allegations in relation to what the Plaintiffs call "the Blast Shop Facility." The Plaintiffs' Complaint defines the "Blast Shop Facility" as "a building addition at 101 Blish Street A, Seymour, Indiana [used] to house the Blasting Equipment." Compl. ¶ 25. The allegation also defines Blasting Equipment as "several pieces of sand blasting equipment [] including a large Hoffman Blast Room" that Plaintiff Maschino purchased. *Id.* The Plaintiffs repeatedly reference "the Blast Shop Facility" in their Complaint and briefs in an apparent attempt to conflate the facility and equipment owned by Maschino and 101 Blish Street A, LLC, with The Blast Shop, Inc., the sandblasting business owned and operated by the Wayts.

For purposes of this Entry, the Court assumes the following allegations as true: (1) the Wayts told business owners that The Blast Shop was closed or that Royalty had purchased it and moved it to Crane Hill; (2) the Wayts encouraged Royalty to place signs on Highway 50, stating the following: "The Blast Shop & The Blast Shop Powder Coating Have Moved to Crane Hill Machine[.] For More Info call 812-358-3534"; (3) the Wayts transferred The Blast Shop, Inc.'s telephone number, (812) 524-8817, to Crane Hill; and (4) the Wayts created and maintained a

6

website listing 101 Blish Street as The Blast Shop's address and 855-209-3101, which belonged to Crane Hill, as its telephone number.

False advertising claims under the Lanham Act are limited in scope. The Lanham Act covers "commercial advertising and promotion" only. *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005). The Seventh Circuit differentiates "commercial advertising" from person-to-person communication as follows:

> Advertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication. In normal usage, an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not. So we have held in a series of disputes that require a definition of "advertising injury" under insurance policies. . . . "Advertising is a subset of persuasion and refers to dissemination of prefabricated promotional material."

*First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) (quoting *Zurich Ins. Co. v. Amcor Sunclipse N. Am.*, 241 F.3d 605, 607 (7th Cir. 2001)). Under this definition, person-to-person communications that do not derive from prefabricated promotional materials do not constitute "commercial advertising." *Id.* at 804.

The Seventh Circuit defines "promotion" to mean "a systematic communicative endeavor to persuade possible customers to buy the seller's product." *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012). Thus, person-to-person communications can constitute "promotion" under the Lanham Act, but only under such circumstances. *See id.* at 522 (promotional materials containing false statements regarding a competitor were subject to Lanham Act when used in face-to-face presentations to most potential customers in the market and when posted on one of the websites of the defendant). The person-to-person communications of which the Plaintiffs complain are not commercial advertising or promotion as defined in *First Health Group Corporation* or *Neuros Co., Ltd.* The Plaintiffs do not describe

7

person-to-person communications that derive from prefabricated promotional materials, nor do they contend that the Defendants engaged in a systematic communicative endeavor to distribute false statements to most of its or the Plaintiffs' potential customers. Therefore, any statements, false or not, that the Wayts made to business owners that The Blast Shop was closed or that Royalty had purchased it and moved it to Crane Hill are not covered by the Act.

Even if such statements were meant to be covered by the Act, they are consistent with transferring ownership of The Blast Shop, Inc., to Royalty or Crane Hill and are not false or misleading. Neither is the information that was provided on the sign that Ed Wayt encouraged Royalty to place along Highway 50. If the Wayts closed their business and transferred it to Royalty or Crane Hill, the sign did not contain false information and, thus, did not violate the Lanham Act. If the Wayts simply closed their business and did not transfer it to Royalty or Crane Hill, the sign in no way harmed the Plaintiffs, because they have no legal claim to The Blast Shop, Inc., or anything related to the operations of that business, despite it having operated out of the 101 Blish Street A Facility. Although the Plaintiffs need not be in direct competition with the Defendants to challenge the Defendants' practices under the Lanham Act, the Plaintiffs "must show economic or reputational injury flowing directly from the deception wrought by the [Defendants'] advertising." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1391.

Based on the allegations on which the Plaintiffs rely, The Plaintiffs have not shown such an injury or even such deception. The Plaintiffs could not be injured through direct diversion of sales from them to the Wayts because the Wayts no longer operated a business.[4] *See Hot Wax,*

---

[4] In their Complaint, the Plaintiffs allege that the Defendants' false advertising "is likely to influence the purchasing decisions of customers of both sand blasting and metal fabrication services and products." Comp. ¶ 118. They also contend that the Blish Street A Facility's location provided it with a competitive advantage that "insured the natural metal fabrication referrals of many customers of [T]he Blast Shop [] would flow to High Value [Metal] as another

8

*Inc.*, 191 F.3d at 819. Nor could the Plaintiffs suffer a loss of goodwill associated with any of the Plaintiffs' products as the result of any false statement alleged by the Plaintiffs, because the false statements refer only to "The Blast Shop," not to any of the Plaintiffs.[5] *See id.* Simply because The Blast Shop, Inc., refers to a physical location in its name, i.e., the "Shop," the owner of the location at which The Blast Shop, Inc. previously operated does not have a viable claim for any interest in The Blast Shop, Inc.'s business. In a nutshell, the problem with the Plaintiffs' Lanham Act claim is that the Plaintiffs did not own or operate the sandblasting business called The Blast Shop. A corporation called The Blast Shop, Inc., owned that business, and the Wayts operated it. Therefore, no statements about The Blast Shop could have caused injury to the Plaintiffs, whether those statements were true, misleading, or false.

The Plaintiffs also claim that it is false advertising on the part of the Wayts for telephone book listings for "The Blast Shop" to link The Blast Shop, Inc.'s telephone number to the 101 Blish Street address. The Plaintiffs have not alleged that the Wayts falsified the telephone book entries or in any way caused them to be inaccurate. Rather, they allege that "Crane Hill [] used The Blast Shop, Inc. phone number to communicate to customers that there was no blast shop facility located at 101 Blish Street . . . ." Dkt. No. 114 at 6. This is not an allegation of wrongdoing by the Wayts and cannot be used to support a false advertising claim against them.

---

advantage of Maschino's businesses over Royalty and Crane Hill." Compl. ¶ 33 (referring to Compl. ¶ 32). If The Blast Shop, Inc., merely closed and was not sold to Crane Hill, as the Plaintiffs assert, High Value Metal would have nonetheless lost all referrals from The Blast Shop, Inc. Any false statement that The Blast Shop moved to Crane Hill or was purchased by Royalty would not have changed that result.

[5] The Plaintiffs allege that the Wayts attempted to divert mail away from New Blast, LLC. This allegation is not considered by the Court because it is not a commercial advertisement or promotion and is therefore not relevant to the Plaintiffs' false advertising claim under the Lanham Act.

The Plaintiffs further contend that, in 2012, the Wayts created and maintained a website that referred to "The Blast Shop" and associated it with the 101 Blish Street address and a telephone number that belonged to Crane Hill. The Plaintiffs argue that "[t]he Wayts utilized this website as another means of redirecting customers away from the Blast Shop Facility to Crane Hill." *Id.* at 10. However, again, neither "the Blast Shop Facility," *i.e.*, the Blish Street A Facility, nor the Plaintiffs, operated a sandblasting business until the formation of New Blast, LLC, in June 2012. The Plaintiffs have not alleged that the Wayts redirected any of New Blast, LLC's customers to Crane Hill. Even if they made that allegation, the website would not support it. The website refers to "The Blast Shop," not New Blast, LLC. Again, the Plaintiffs have conflated the Blast Shop Facility -- which is a building, not a business -- with The Blast Shop, Inc., which is the business that conducted sandblasting and was at all times owned and operated by the Wayts.

Drawing all reasonable inferences in the Plaintiffs' favor, the Plaintiffs have not demonstrated that there is a genuine issue of triable fact as to whether the Wayts engaged in false advertising under the Lanham Act. Therefore, the Court **GRANTS** the Defendants' motion for summary judgment with respect to this claim (Count I).

### B. Supplemental Jurisdiction

Because the Court grants the Defendants' motion for summary judgment with regard to the Plaintiffs' federal law claim against the Wayts, the only claim over which it has original jurisdiction, the Court must decide whether it should exercise supplemental jurisdiction over the Plaintiffs' state law claims and the Wayts' state law counterclaims.

The Court has discretion whether to exercise jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. §

10

1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ."). "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (internal citations omitted). There are exceptions overcoming that presumption, *RWJ Mgm't Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012), but none of those exceptions apply here. The Wayts have explained that their state law counterclaims are already pending in existing state court litigation, so no exception applies to those claims. Dkt. No. 108 at 4 n.1. In addition, various state law claims brought by the Plaintiffs are also pending in existing state court litigation. *See, e.g.*, Dkt. No. 1-21. Although the Plaintiffs have raised additional state law claims in this Court, the Court sees no reason why these claims could not be pursued in the existing state court litigation.

The Court finds that the presumption of relinquishing jurisdiction should be followed in this case, and therefore declines to continue exercising supplemental jurisdiction over the parties' state law claims. Dismissal of the parties' state law claims shall be without prejudice to reflect that nothing in this action prohibits the parties from pursuing any state law claims in state court.

## IV.   CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment (Dkt. No. 107) is **GRANTED** with respect to Count I, the Plaintiffs' false advertising claim under the Lanham Act against Defendants Tex A. Wayt and Ed Wayt. The Court declines to further exercise supplemental jurisdiction over any of the Plaintiffs' remaining state law claims against

Tex A. Wayt and Ed Wayt or the Defendants' counterclaims in this matter and, therefore, **DISMISSES** all remaining state law claims and counterclaims **WITHOUT PREJUDICE**.

SO ORDERED: 10/31/16

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.